### E. P. GRAY ET AL. V. JENNIE THOMAS.

#### No. 3335.

1. **Proof of Lost Note.**—Since the statute allowing parties in interest to testify, it has not been necessary to file an affidavit of the loss of a note as a predicate to proving its contents. The proof of loss and contents may be made without such affidavit. Blanton v. Ray, 66 Texas, 61, adhered to.

2. **Facts.**—See facts held sufficient evidence to the loss of a promissory note sued on to admit secondary evidence of its execution and contents.

3. **Interest.**—To authorize an abatement of interest between maturity of a promissory note and suit upon it, the defendant should allege and prove the facts suspending interest.

4. **Divorce Proceedings Affecting Property.**—The rule now established in this court is, that a decree of divorce which does not purport to make a partition between the husband and wife, or to settle their rights to property claimed by either, does not preclude a suit by either party for such partition or to establish such right.

5. **Same—Fact Case—Fraud.**—The widow of the payee of a vendor's lien note brought suit on it and to foreclose the lien, alleging that she was the sole heir to her husband, and that the land was community property. Intervenor alleged that she had been the wife of deceased; that her husband had conveyed the land in secret trust, and by his cruel treatment had compelled her to obtain a divorce from him; that she did not know of her husband's interest in this land at the time of the divorce proceedings, and had but recently ascertained the facts; that her husband after the divorce intermarried with the plaintiff, and after the marriage the land was reconveyed to him and thereafter sold by him. *Held*, that the intervention showed an interest of one-half of the note sued on, and it was error to sustain a demurrer to the intervention.

6. **Same.**—If, however, the divorce decree did purport to adjust the property rights, then her remedy would be an original action for a new trial, based upon newly discovered evidence, in the court where the judgment was rendered, all persons interested in the property to be made parties.

APPEAL from Jefferson. Tried below before Hon. W. H. FORD.
The opinion states the case.

*Greer & Greer*, for appellant E. P. Gray.—1. Where a written instrument which has been lost is sued upon, the affidavit of its loss is a prerequisite to the trial as evidencing the bona fides of the party pleading it; and to permit the party to suspend the trial after the evidence is partly introduced, and then make and file the affidavit, places the opposite party at a disadvantage, and defeats the reason of the rule of law requiring the affidavit. Vandergriff v. Piercy, 59 Texas, 371; Butler v. Dunagan, 19 Texas, 559; Crayton v. Munger, 9 Texas, 285; Bateman v. Bateman, 16 Texas, 544; Dunn v. Choate, 4 Texas, 14.

2. The plaintiff being unable to read and write, was incapable of distinguishing the note from any other written instrument, and was incompetent to prove its loss.

*Greer & Greer*, for appellant Clara Adams.—1. Where a judgment is procured by fraud as to one of the parties and against the other, and the party working the fraud dies, leaving as sole heir de jure one who was cognizant of and a party to the fraud, and this is not discovered until after such death, neither the doctrine of res adjudicata nor of collateral attack will apply; and courts of justice will not permit themselves to be used for such occult designs. Rev. Stats., arts. 2465, 2852, 2867; Moore v. Moore, 73 Texas, 390; Haggerty v. Harwell, 16 Texas, 665; Harris v. Hardeman, 15 Texas, 468.

2. George Thomas having died before the discovery of the fraud, leaving as sole heir the plaintiff, his co-conspirator, the attack is not collateral but direct, as though between the original parties to the judgment, there being no question of injury to innocent persons. Rev. Stats., art. 2465.

*Douglass & Lanier*, for appellee.—1. It is not necessary that an affidavit of loss or inability to produce in evidence a note sued on be first made before proof is admissible of such loss, destruction, or inability to produce same, parties to suits being competent witnesses in Texas. Blanton v. Ray, 66 Texas, 61.

2. The appellant failed to urge the insufficiency of the testimony to establish the loss of the note in his motion for a new trial in the court below, and the assignment will not be considered in this court for that reason. Rev. Stats., art. 1369; Hillebrant v. Brewer, 6 Texas, 45; King v. Gray, 17 Texas, 62.

3. To get the benefit of either a payment or tender of payment both must be specially pleaded, and the evidence must show an unconditional tender of money before interest will stop on a promissory note.

That payment must be specially pleaded: Holliman v. Rogers, 6 Texas, 91; Able v. Lee, 6 Texas, 427; Price v. McCoy, 1 Ct. App. C. C., sec. 181.

As to tender: Tooke v. Bonds, 29 Texas, 419.

In reply to brief of appellants Clara and James Adams.—The petition of intervention filed by the appellants Clara Adams and James Adams shows no cause of action; and the court did not err in sustaining a general demurrer thereto.

1.   Because five years had elapsed since the judgment of the District Court had been rendered divorcing the said Clara and her husband George Thomas, and the partition thereby of their property, and the petition shows it.   Said appellants are seeking to maintain a bill of review after the lapse of over two years, and in a case where no bill of review can be maintained.

2.   The petition shows said appellants guilty of gross negligence in not discovering the facts alleged when the suit for divorce was pending, and afterward.

3.   The intervenor Clara Adams does not offer to do equity and restore the property for partition in this suit that she received in the judgment she seeks to set aside.

That the bill of review can not be maintained:   Harn v. Phelps, 65 Texas, 596; Myers v. Pickett, 81 Texas, 53; Chrisman v. Miller, 15 Texas, 159; Cundiff v. Teague, 46 Texas, 475; Seguin v. Maverick, 24 Texas, 526; Nichols v. Dibrell, 61 Texas, 539; Wilkerson v. Shoonmaker, 77 Texas, 615.

That action of court was proper on account of negligence:  Meyers v. Pickett, 81 Texas, 53; Vardeman v. Edwards, 21 Texas, 737; Harn v. Phelps, 65 Texas, 596, and authorities cited therein.

That the proceeding is an equitable action and intervenors' petition bad, because intervenors do not offer to restore property received and throw same in hotch-potch again: Howard v. North, 5 Texas, 290; Folts v. Ferguson, 77 Texas, 301; Vardeman v. Edwards, 21 Texas, 737; Merrill v. Roberts, 78 Texas, 28.

GAINES, Associate Justice.—The appellee brought this suit against appellant Gray to recover a sum of money due by a promissory note which was alleged to be lost, and to enforce a vendor's lien upon a tract of land for the purchase money of which the note was given.  The note was payable to George Thomas, formerly the husband of the plaintiff, but who was dead at the time the suit was brought.   She alleged that the land for the purchase of which the note was given was the community of herself and her deceased husband, and that he died without issue, leaving her the sole heir of his share of the common estate.

The defendant pleaded a general denial only.   But appellant Clara Adams, joined by her husband, filed a petition in intervention, claiming to be entitled to the proceeds of the note, and praying judgment accordingly.

A demurrer to the petition in intervention was sustained, and intervenor having declined to amend she was dismissed from the suit.   Upon

the trial there was a verdict and judgment for the plaintiff as prayed for in her petition. The defendant and the intervenors have both appealed.

During the progress of the trial the plaintiff, being upon the stand as a witness, was asked by her counsel the question, "Is the note sued upon lost?" and thereupon the defendant objected to her answering the question, upon the ground that no affidavit of loss had been filed. The court sustained the objection, but permitted such affidavit to be then filed and the question to be answered. There was no error in the court's ruling prejudicial to the defendant. Before the passage of the statute which allows parties to testify, when it became necessary to prove a lost instrument by secondary evidence, the practice was to permit the party to file an affidavit of the loss addressed to the court, as a predicate to the introduction of evidence of its execution and contents. This was a privilege extended to a party who sought to establish a lost writing, and grew out of the necessity of the case. But since parties are now permitted to testify, we are at a loss to conceive of any reason why they should not be allowed to give testimony of the fact, instead of filing an ex parte affidavit. Such a practice gives the opposite party the opportunity of cross-examination, and he has no grounds of complaint. That the court should have permitted the plaintiff to testify in the first instance without filing the affidavit is not an open question in this court. Blanton v. Ray, 66 Texas, 61. But when the party elects to file an affidavit, we understand it to be a proper practice to permit it to be presented on the trial immediately before he offers his proof of the execution and contents of the instrument.

But it is also complained that the testimony was not sufficient to show the loss of the note. The plaintiff, speaking of her husband, testified as follows: "He kept his papers over there in Orange County at our house in a trunk, and on Sunday morning after his death, in company with a large number of others, I went over to the house and found his papers scattered all around over the house. I got a man by the name of James Roland, who could read and write, to help me look for the note, but we could not find it. I can not read and write, but this man James Roland could do so. I have never been able to find the note, and have never seen it since the Thursday before George Thomas' death. * * * I saw the note in George Thomas' possession and among his papers just two days before he was killed. The last time I saw the note it was in his possession."

We think this evidence sufficient to support the court's ruling, and to admit secondary evidence of the contents of the note.

It is also insisted that the court erred in its charge to the jury with respect to the interest upon the note. It appeared that the note drew interest from August 22, 1887, and that on June 16, 1888, the defendant paid one Vestal the sum of $259.20 due upon a note executed by George

Thomas to him for the purchase money of the land. The plaintiff substantially admitted this credit. The defendant testified, that he had been ready to pay the note, but had not done so because of its loss. The court in effect instructed the jury to calculate the interest on the note from August 22, 1887, to August 22, 1888 (the day of its maturity), and to subtract from the sum the amount paid to Vestal, and to give judgment for the balance with interest thereon from the date of the service of citation to the day of the trial. The defendant pleaded no fact which entitled him to any deduction of interest between the time of the maturity of the note and the service of the citation, and the plaintiff under the pleading was entitled to more interest than she recovered. Hence the defendant can not complain of the result. We think, however, the court should have instructed the jury to add the interest on the note up to the date of the payment to Vestal, to subtract from the sum the amount of the payment, and to allow interest on the balance to the date of the trial. It was admitted that defendant paid the note held by Vestal with the consent of plaintiff, and therefore the interest should have been calculated in the same manner as if the note was past due on the day of that payment.

The appellant Clara Adams, the intervenor in the court below, assigns as error the action of the court in overruling the demurrer to her petition in intervention. The allegations in the pleading in question are in substance as follows: That intervenor Clara Adams and George Thomas, the payee of the note in suit, were at one time husband and wife, and that during the existence of that relation they acquired as common property the land for the purchase money of which that note was given; that Thomas, her said husband, having become unfaithful to her and having treated her cruelly, she brought suit against him for divorce and for the division of their property; that while said suit was pending, in order to defraud her of her rights in their community property he professed repentance and proposed a reconciliation, which was accepted; that she thereupon dismissed her suit; that after the suit was dismissed he conveyed the land for which the note was given, as well as other lands belonging to the community estate, to a third party without consideration, with the understanding that they were to be reconveyed to him after a divorce should be decreed between him and his wife, now the intervenor Clara; that immediately thereafter he renewed his unfaithful and cruel conduct, so that she again brought suit and procured a divorce dissolving the bonds of matrimony between them; and that subsequently thereto he married the plaintiff and procured the lands to be reconveyed to him. The intervenor also alleged, that the lands were their common property, and were conveyed by Thomas for the purpose of defrauding her of her rights therein, and that at the time she obtained the decree of divorce she was ignorant of

the fact that the lands had been conveyed away in trust, and did not make the discovery until a short time before this suit was brought.

From the brief of counsel, we infer that the demurrer to the petition in intervention was argued and decided in the court below upon the theory that it appeared from its allegations that the rights of George Thomas and of intervenor in their community property had been determined in the decree of divorce. But as we construe the language, the allegations do not make that case. The allegations of the intervenors with reference to that matter are as follows: "So that this intervenor and her said attorneys, believing from said false and fraudulent representations that the homestead of this intervenor and said Geo. Thomas, consisting of lots, etc., * * * which was this intervenor's separate property, was about all she could legally recover in said proceedings, on June 22,. 1886, filed her first amended original petition in said divorce proceedings, only claiming said lots, and believing the community estate only owned the small sum of $400, admitted that this sum belonged to the defendant in that case, George Thomas; and that the decree in cause No. 986, Clara Thomas v. George Thomas, the same so recited, while the said George Thomas and this intervenor in truth and in fact owned all the community estate herein before described." It may be suspected from this allegation that the decree settled the rights of the parties in their community property, but it is not so alleged. Even taking the allegation most strongly against the pleader, it is not to be deduced from the petition in intervention that the decree undertook to do more than to decree the homestead to the intervenor as her separate property, and to adjudge that George Thomas should hold the sum of $400—presumably in money—to which the intervenor admitted he was entitled. According to the averments, the intervenor at the time of that suit was ignorant that her husband owned the land, and it would seem that the rights of property in that land could not have been adjudicated in that suit. The rule now established in this court is, that a decree of divorce which does not purport to make a partition of the property between the husband and wife, or to settle their rights to property claimed by either, does not preclude a suit by either party for such partition or for the establishment of such rights (Whetstone v. Coffey, 48 Texas, 269); and we see no reason why, when the decree is confined to certain specific property, the same rule should not apply to other property not brought within the scope of the adjudication. To hold that such a judgment would be conclusive as to property not included, it would have to be held that because the property had not been claimed in the divorce suit the right had been waived. This doctrine was announced in Hardin v. Hardin, 38 Texas, 616, but was expressly repudiated in Whetstone v. Coffey, supra. That it would be unjust to apply it in a case where the husband in anticipation of a divorce has

fraudulently conveyed the property to a third party to hold for him is quite clear.    We think, therefore, that if the allegations in the petition for intervention are true, and especially if the averments as to the decree in the divorce suit are correct, the intervenor was then entitled to enforce her claim to the extent of one-half of the proceeds of the land. It follows that the demurrer to her petition should not have been sustained.

There are questions suggested by the record in this case which we do not consider proper to determine upon this appeal.    If facts exist which should exonerate the defendant from the payment of the entire interest on the note in suit he should plead them, in order to avail himself of such a defense.    And again, it may be that the issues determined in the decree which dissolved the bonds of matrimony between the intervenor and her former husband are different from those shown by her petition in intervention.    The answer of the plaintiff to that petition makes an exhibit of an alleged copy of the decree which would show such to be the fact.    But the question before us being upon the sufficiency of intervenor's petition, we are not at liberty in determining it to look to that answer.    We merely hold, that according to her allegations the question of the rights of the parties in the land for which the note in suit was given was not determined in the divorce suit; and that if conveyed by the husband to a third party, without consideration and in trust for the grantor, it remained the community property of himself and intervenor.    In such a case she would be entitled to recover one-half of the proceeds of the note.    We will say, however, that if as a matter of fact the decree for divorce did determine the rights of property in this land, the intervenor can not attack it in this collateral action.    Her remedy would be by an original action for a new trial, upon the grounds of fraud and newly discovered evidence, in the court in which the judgment was rendered, and all persons who have acquired an interest in the property should be made parties to the suit.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 5, 1892.